# Rummell, Administrator, *versus* Dilworth, Porter & Co., Limited.

## Rummell *versus* Same.

1. The relation of Master and Servant exists where the latter is employed, not by the Master directly, but by an employee in charge of a part of the Master's business with authority to engage assistants therein; and the fact that the subordinate employee receives compensation proportioned to the work done does not alter the case.

2. A Master must provide and maintain reasonably suitable instruments and means to carry on his business so that his servant may perform his duties with relative safety and without exposure to dangers not reasonably incident to his employment.

3. The scope of duty within which a servant is entitled to protection is to be defined by what he was employed to perform, and by what, with the knowledge and approval of his employer he actually did perform, rather than by the verbal designation of his position.

4. A servant who has had a full and fair opportunity of becoming acquainted with the risk of his situation, and who has made no complaint to his Master as to a danger to which he is exposed, but continues to work voluntarily, notwithstanding the same, must be held to have assumed for himself the risk of the injury to the danger of which he is exposed.

5. A boy was engaged to work on a train of rollers in a spike mill, after having been at work a few days he was, while fulfilling his duty, caught by the cogs of the rollers, drawn in and hurt; a board protection extended along the rollers, but stopped short of the point at which the boy had to stand to perform part of his work about the rollers; had the board extended three feet further than it did he could have done his work in safety:

    *Held*, there was sufficient evidence of negligence on the part of the employer and mill owner to require the submission of the case to the jury.

November 11th, 1885.    Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas No. 1, of *Allegheny County*: Of October and November Term, 1885, Nos. 208 and 209.

These were two actions brought in the Court below against the same defendants, Dilworth, Porter & Co., Limited, one by George Rummell, Jr., a minor, to recover for injuries suffered through the alleged negligence of the defendants, the other by George Rummell, Sr., father of the said George Rummell, Jr., to recover for the loss of his son's services, and for expenses, medicine, etc., rendered necessary by the same cause.

[Rummell, Adm'r, *v.* Dilworth.]

The negligence set up in the declaration in each case was the same, and was charged as follows: The defendants, on the 10th day of September, 1881, had in their employ, George Rummell, Jr., as a laborer in their spike mill, in the 30th ward, city of Pittsburgh, near certain rollers, machinery and appliances in said mill. That it was defendant's duty to furnish, keep and maintain said machinery that the same, while in motion, should be in safe and proper condition, with proper guards and lights, so that the said George might safely, and without peril to life and limb, labor and work in said mill, etc., that the defendants did not exercise due, ordinary and proper care in guarding against danger to said George and others, who worked at and near certain rollers, cogwheels, and machinery therein on said day, but wholly failed therein, especially to place and maintain at and near said cogwheels a guard to protect the plaintiff from hurt and injury; that, by reason of such failure and neglect on part of defendants, on said day and year, the said George, a minor, while he was employed in defendants mill, near said cogwheels then in rapid motion, was injured by having his right leg caught in said cogwheels, and broken, crushed and bruised, causing him great bodily pain, and wholly disabling him from labor in defendants mill, or elsewhere, for life, so that he was unfit to labor or support himself by reason thereof.

The defendants pleaded in each case, not guilty.

The two cases were tried together before the same jury, when the plaintiffs proved the following case: George Rummell, Jr., was a son of George Rummell, Sr., and on the 10th day of September, 1882, was about seventeen years old. Young Rummell was employed by the defendants as " dragger down " in their spike mill; in that capacity it was his duty to drag heated pieces of billets of old iron rails out of a furnace and place them a few feet distant in a train of ten pairs rollers by which they were reduced to spikes. The rollers were so constructed that the head rollers were wider apart than the others as the billets passed along the train; the train was protected along its sides where the cogwheels were exposed when in motion, with guard boards two feet high, extending from the second pair of rollers to the lower end of the train, but the cogwheels of the two head pairs of rollers were left unprotected and the cogs were exposed when the " draggers down " were required to work. When a hot billet was started it would sometimes stick at the first rollers, and an appliance called a gate had to be opened to let it pass on ; this had to be done promptly, as otherwise the billet would cool and the rollers might be broken by it, and there was always another billet ready to start. The gate was between the first and second

[Rummell, Adm'r, v. Dilworth.]

rollers, where there was no guard board, and the person open-
ing the gate would step to one side of the rollers and open
the gate by throwing off a ring from the top of the two iron
rods extending perpendicularly above the rollers.   This done
the billet would pass into the second pair of rollers.   The
gate had then to be at once closed.   To do this it was neces-
sary to stand beside the cogs in rapid motion and reach
over, catch the gate rods with his hands, draw them together
and replace the ring.   This duty was dangerous on account
of the revolving cogs being exposed and the liability of the
"draggers'" clothing to be caught therein; had the guard boards
extended three feet further, so as to cover the cogs on the
first two pairs of rollers, as they did the other, the danger of
being caught would have been avoided.   It appeared that
the duty of opening and closing the gates was more especially
that of the roller boss, but that the "draggers" were accus-
tomed to perform it and regarded it as part of their duty.
On the day before mentioned, about 4 o'clock in the
morning, while the mill was dark and not provided with suffi-
cient light to show clearly the movements of the machinery,
Rummell, who was on duty, while opening the gate had his
trousers caught by the cogs, was drawn in to the machinery
and had his leg terribly crushed by the revolving cogs.   It
also appeared by the plaintiff's evidence that Rummell's im-
mediate employment was by one Richards, the roller boss, who
paid him his wages, and that he had been employed in the
defendants mills about five days before the day of the acci-
dent.

The plaintiffs having rested, COLLIER J., on motion of the
defendants entered a compulsory nonsuit in each case, which
nonsuits the Court in banc refused to take off.

The plaintiffs took these writs assigning for error the refusal
of the court to take the judgments of nonsuit in each case.
After the trial in the Court below George Rummell, Jr., died
and the suit in his case was prosecuted by George Rummell,
Sr., administrator of his son's estate.

*A. M. Watson*, for plaintiffs in error.—An employer is
bound to provide ordinarily safe appliances and machinery and
to keep them in proper condition for the protection of his em-
ployees, failing in these respects an employer is liable to his
employee for injuries suffered through such failure of duty:
Pittsburgh & Connellsville R. R. Co. v. Sentmeyer, 92 Pa. St.,
280.   The case should have been submitted to the jury: Baker
v. A. V. R. R., 95 Pa. St., 211; R. R. v. Heil, 5 W. N. C., 91;
R. R. v. Foxley, Pitts., L. J., Oct. 14th, 1885; Maynes v. At-

water, 88 Pa. St., 497; Smyth *v.* Craig, 3 W. & S., 14; Bevan *v.* Ins. Co., 9 Id., 187.

*Wm. R. Blair,* (with him *John Dalzell*) *contra.*—There was no evidence of negligence on the part of the defendants, there is no evidence that the machinery was not sound, complete and of first class material. Will any Court say that because in a large mill covering a large block of ground a single board happens to be three feet shorter than the space it is intended to cover, a jury is at liberty to find negligence, especially when there is no evidence that the defendant ever had any thing to do with, or any knowledge of the board, its placing, displacement or condition there? There is no evidence from which any obligation to have a board there at all can be inferred.

A Master is not an insurer of his servant's safety. The obligation is simply to use ordinary care in the selection and care of the machinery at which the servant works: Priestley *v.* Fowler, 3 M. & W. 1; Wright *v.* R. R., 25 N. Y., 562; Hayden *v.* Man'fg Co., 29 Conn., 548; Payne *v.* Reese, 12 W. N. C., 97; Mansfield Co. *v.* McEnery, 10 Norris, 185; P. & C. R. R. Co. *v.* Sentmeyer, 11 Id., 276.

Rummell was hurt while acting out of the line of his employment; it was no part of the "dragger downs" duty to close the gate; therefore, being injured while doing something he had voluntarily undertaken he cannot recover: Brown *v.* Byroads, 47 Ind., 435; P. & C. R. R. *v.* Sentmeyer, *supra;* McGlynn *v.* Brodie, 31 Cal., 376; Wharton Negl., §§ 215, 244; 2 Thompson Negl., p. 1016.

Rummell was hurt by one of the ordinary risks of his employment: Hayden *v.* Man'fg Co., 29 Conn., 548; Man'fg Co. *v.* Ballon, 71 Ill., 417; Buzzell *v.* Man'fg Co., 48 Me., 121; Dynen *v.* Leach, 26 L. J. Exch. N. S., 221; Stone *v.* Oregon Man'fg Co., 4 Or., 52; Ladd *v.* R. R. Co., 119 Mass., 412; Frazier *v.* R. R. Co., 2 Wr., 104; P. & C. R. R. Co. *v.* Sentmeyer, *supra;* Mansfield Co. *v.* McEnery, *supra;* G. & C. P. R. W. Co. *v.* Bresmer, 1 Out., 103.

Mr Justice CLARK delivered the opinion of the Court, January 4th, 1886.

The defendants, Dilworth, Porter & Co., Limited, are the owners of a spike mill in the city of Pittsburg. The plaintiff was, at the time of the injury complained of, an operative or laborer in that mill; he was employed by Wm. Richards, the roller boss, and was paid by him, but whether he was directly in the defendant's employ, or indirectly as the assistant of Richards, he may be treated as their employee. He was engaged in the work of the defendants, upon their machinery, and the de-

fendants were themselves operating the mill. The right of the roller boss to employ assistants is clearly shown, and as it does not appear that he was an independent contractor, it is unimportant that the amount of his compensation was · measured by the number of tons manufactured. The plaintiff was not a trespasser, he was in the rightful discharge of the duties of a valid employment. The relation of master and servant is fairly inferable from the proofs, and the defendants are, therefore, bound to the performance of all the duties, and are entitled to the protection which that relation affords.

The plaintiff entered the defendant's service on Tuesday, 6th March, 1881, and received the injury at four o'clock of the following Friday morning; he was seventeen years of age, and had no previous experience in the business in which he was employed. His duty was to drag heated billets of iron from the furnace, and to place them in a train of ten pairs of rollers, by means of which they were finally manufactured into spikes, he was designated or known in the mill as a "dragger down." Two "draggers down" served each train of rollers and they were required to move with rapidity; the heat and exertion were such that the "turn" did not exceed one hour, and when the turn was over, another pair supplied their places, and the work was continued by alternation.

The rollers were kept in motion by a combination of cog-wheels at the end, extending all along the sides of the train. When the billet was placed in the first pair, it would, in some instances, stick fast, and an appliance called a "gate" must be opened to allow it to pass through; this gate was between the first and second pair of rollers. The person operating it was obliged to step quickly to the space between the ends of the first and second pair of rollers, where the cog-wheels were in rapid motion, and with a pair of tongs provided for the purpose, throw a ring from the top of two iron rods, extending perpendicularly above the rolls. The billet passing into the second pair of rollers, the gate must be closed at once, in order to admit another, which owing to this unusual delay was in waiting. To close the gate it was necessary to reach over the cog-wheels, and with both hands catch the gate rods, draw them together, and replace the ring. To avoid delay, and to prevent injury to the rollers, this movement must be executed quickly. The gate was in general opened by the roller boss or one of his assistants, but sometimes when they were absent, or otherwise engaged, it was opened by the "draggers down," one of whom, by the very nature of their employment, was always present.

As a protection against the cog-wheels along this train of rollers, a guard rail, twelve inches in width, had been erected

extending from the second pair of rollers to the foot of the train, but the rail did not reach to cover the cog-wheels of the two pairs of rollers at the head, between which the gate was to be opened and shut; these were all exposed; no protection of any kind was here provided.

At the time of the injury, George Rummell, Jr., the plaintiff, placed a heated billet in the first pair of rolls; it stuck fast; the roller boss was not there at the time; Rummell opened the gate, and whilst in the act of closing it, was caught in the cogs and very seriously injured.  It is argued that the plaintiff, by the terms of his employment, was not charged with the opening and closing of the gate; that he was employed as a "dragger down" only; that his duty was discharged in the delivery of the billet into the rolls, and that he was therefore a mere volunteer in the act from which his injury was received.  It appears, however, that he was employed by, and was under the orders and control of the roller boss, whose proper duty it may have been in this emergency to relieve the rollers; but Richards, from time to time, allowed the "draggers down" to perform this work, especially in his absence, as he was frequently absent in other parts of the mill.  The "draggers down" appear to have assumed that this was part of their duty, and Richards certainly did nothing to inform them otherwise; he seems to have stood by on repeated occasions whilst they did it.  The act was one demanding prompt and speedy action, and in the absence of the roller boss, and his general assistants, it fell into the hands of the "dragger down," who was expected to act at the instant.  The scope of his duties is to be defined by what he was employed to perform, and by what with the knowledge and approval of his employer he actually did perform, rather than by the mere verbal designation of his position.  Besides, Anthony Myers testifies, that one of the ordinary duties pertaining to the position of "dragger down" was to open the gates whenever the billet stuck, and that they were employed in part for this purpose; and this would appear to conform to the actual practical management of this part of the mill, and to the apparent understanding of all concerned therein.  The jury, under the evidence, would certainly have been warranted in finding that Rummell was not a mere volunteer in the performance of the act from which he received the injury.

But, it is said, there is no evidence that the plaintiff's injury resulted through the defendant's negligence; on the contrary, that it resulted from the ordinary risks of the business, which the plaintiff had a fair and full opportunity to know; which, indeed, he must have seen and known from the moment of his employment.

It is a well settled rule of the law that the master must adopt, provide and maintain reasonably suitable instruments and means with which to carry on his business, so that his servant may perform his duties with relative safety, and without exposure to dangers which are not reasonably incident to his employment. Correlative to this is the rule, equally well settled, that a servant will be deemed to have assumed all risks naturally and reasonably incident to his employment,. and to have notice of all risks, which, to a person of his experience and understanding, are or ought to be open and obvious : Railroad Co. v. Keenan, 7 Out., 124.

These rules are elementary and fundamental, and are everywhere recognized, they grow out of the necessities of the relation of master and servant, and are encouraged and sustained by public policy. If, however, a person specially undertake to perform a peculiarly perilous work, by operating a machine obviously wanting in suitable appliances for safety, knowingly and voluntarily, he cannot afterwards complain, in case of injury, in consequence thereof, that the machinery was of a dangerous kind, and that it was wanting in appliances reasonably necessary to render it safe : Railway Co. v. Bresmer, 1 Out. 103; Marsden v. Haigh & Co., 14 W. N. C., 526.

So, upon an analogous principle, if an employee after having a full and fair opportunity to become acquainted with the risk of his situation, makes no complaint whatever to his employer, as to the machinery which he knows to be wanting in appliances for safety, takes no precaution to guard against danger, but accepting the risks, voluntarily continues in the performance of his duties he cannot complain if he is subsequently injured by such exposure : Wh. on Neg., § 214. He is not bound to risk his safety in the service of his master, and he may, if he thinks fit, decline to do that which exposes him to imminent peril.

In the case at bar the plaintiff was employed as a " dragger down," and incidentally to that he was charged at times with the duty of opening and shutting the gate. The terms of his employment were general, he might have been assigned to this or any other train of rollers ; there was nothing in the nature or terms of his engagement, by which he would be held to have assumed any special or extraordinary risk, he accepted simply such hazards as were reasonably incident to his employment.

There is evidence tending to show that the closing of the gate was attended with danger, that when reaching in, over the rapidly revolving wheels for that purpose, the operator was liable to be caught in the cogs. There is evidence also that this difficulty was easily obviated, by the extension of the guard rail to cover

the point of danger, and that this appliance was reasonably necessary for the safety of the operator, but that in fact the rail was wanting where most required. On the other hand, it was shown that the gate had been open repeatedly and successfully by others without injury, whilst the guard rail ever since the mill was erected was the same as at the time of the accident. Now, an employer is not bound to furnish the safest machinery, nor to provide the best methods for its operation, in order to save himself from responsibility, resulting from its use; if the machinery be of an ordinary character, and such as can with reasonable care be used without danger, except such as is reasonably incident to the business, it is all that can be required: Railroad Co. *v.* Sentmeyer, 11 Norris, 276; Payne *v.* Reese, 4 Out., 301. Here then, certainly, was a question for the determination of the jury. Was the appliance for opening and shutting this gate, such as we have stated the law requires, to be furnished by an employer, for the use of his employee?

It is argued, however, that if it was not, Rummell could easily see that it was not, and in accepting employment, he accepted the risk; that is to say, that if the machinery was not ordinarily and reasonably safe, its defects or want of appliances for safety were open and obvious, and the plaintiff thereby had notice of them. It is certainly true that the cog-wheels were open and fully exposed to view; this is precisely what is complained of; the closing of the gate required the operator to reach over these cog-wheels whilst in rapid motion; this too was open and obvious; but the danger to be apprehended in closing the gate did not wholly depend upon these facts which were patent. The safety of the operator depended largely upon the amount of exertion required to accomplish the act in each instance, under these circumstances of danger. A man may at arm's length perform with reasonable safety an act which would become exceedingly perilous if the effort required were greatly increased. So, too, a strong and vigorous man might, and doubtless would, perform the work with much greater ease, and therefore with much greater safety, than a man of more moderate powers. One of the witnesses testifies that sometimes the gates are "hard to pull," "you have to pull them together as tight as you can," from which we may readily infer that sometimes they are harder to close than at other times. Actual experiment only, therefore, could fully disclose to the plaintiff the degree of peril he assumed. The cog-wheels in rapid motion were certainly open to the view of the plaintiff, but whether he was liable to be drawn into them depended upon matters with which he was totally unacquainted, and which he could learn only by actual experiment. He was young and without experience, had only been

[Rummell, Adm'r, v. Dilworth.]

on duty for four days, and had opened the gate but two or three times previous to the injury.   The plaintiff cannot be supposed or assumed to have accepted in advance a peril which he could not estimate, and the extent of which for lack of experience he could not have known.   Where there is any doubt whether the employee was acquainted, or ought to have been acquainted, with the risk, the determination of the question is necessarily for the jury.

Assuming, therefore, that the defendants have not provided a reasonably safe appliance for the opening and closing of the gate, we are not prepared to say, as matter of law, under the presentation we have of this case, that the plaintiff cannot recover.   The case was one for the jury, and we think the court erred in refusing to take off the nonsuit.

> Judgment reversed, and a *venire facias de novo* awarded.

For reasons given in our opinion filed in the case of George Rummell, Jr. (now by George Rummell, Sr., administrator) *v.* Dilworth, Porter & Co., Limited, at No. 208, October and November Term, 1885 [*supra*], this judgment is reversed and a *venire facias de novo* awarded.