K. A. AGA, Appellant, v. L. HARBACH, Appellee.

**Master and servant:** RELATIONSHIP: RIGHTS OF A SUBSTITUTE.
1　Where a servant employs a substitute to temporarily perform his labor, with knowledge or consent either express or implied of the master, such substitute assumes for the time being the relation of a servant, is subject to the same rules and in case of injury has the same redress as though regularly employed by the master, even though he may not be entitled to recover wages from the master.

**Employment of substitute by servant:** AUTHORITY: RATIFICATION:
2　EVIDENCE. In an action for injuries by one engaged by a servant as a substitute to perform his service, the evidence is reviewed and held to present questions of fact for the jury as to whether the servant had power, express or implied, to employ plaintiff and as to whether defendant ratified the act of the servant in employing plaintiff as his substitute.

*Appeal from Polk District Court.*—HON. C. P. HOLMES, Judge.

FRIDAY, MARCH 17, 1905.

ACTION at law to recover damages for personal injury. At the close of the evidence, the court directed a verdict for the defendant, and plaintiff appeals.—*Reversed.*

*Healy Bros.* and *Kelleher, Carr, Hewitt, Parker & Wright,* for appellant.

*Ryan, Ryan & Ryan,* for appellee.

WEAVER, J.—The defendant is a manufacturer of furniture in the city of Des Moines, Iowa. One of the shops in which this business is carried on is several stories in height, and in the basement of the building is a boiler and engine, which supply the power for operating the machinery upon

the several floors above.   The evidence shows without dispute that on December 11, 1899, the plaintiff, who is an engineer, was in actual charge of the engine and engine room, and that while so engaged he attempted to adjust an incandescent electric lamp by which the room was lighted, and, on taking hold of the lamp socket for that purpose, received an electric shock, resulting in his serious injury.   There was also sufficient evidence to justify the finding that the lamp, or the wiring with which it was connected, was and had been for a considerable period of time in a defective and unsafe condition, that defendant was chargeable with negligence in respect thereto, and that plaintiff was exercising reasonable care at the time of the accident.   Plaintiff's claim for damages is based on the theory that at the time of the injury he was in the defendant's service, and the defendant owed him the duty of providing a safe place for work.   At the close of the testimony on plaintiff's behalf, the court directed a verdict in favor of the defendant on the sole ground that the evidence was insufficient to show the relation of master and servant between the parties, and that defendant was therefore under no obligation to exercise care for the plaintiff's safety.   This is the controlling question presented by the appeal.   It is the defendant's theory that plaintiff was never employed in his service, and that at the time of the accident he was operating the engine and caring for the engine room as a mere volunteer, without defendant's knowledge or authority.   It is not denied that one Boehler was the engineer regularly employed to have charge of the engine.   It further appears that Boehler, being sick, invited or requested plaintiff to take his place for a few days, until he should be able to resume the work, and that plaintiff was thus engaged at the time of his injury.   This statement at once suggests an inquiry into the nature and extent of Boehler's authority in the premises.

It may be conceded that, generally speaking, a servant who is engaged to perform a given labor is not authorized to

bind his master by the employment of a substitute or as-
1. MASTER AND      sistant.   The relation of the master to a
SERVANT: re-
lationship;        servant is one involving both responsibility
rights of a
substitute.        and risk, and is not to be imposed by
the act of another without authority or consent, express or
implied.   But in most lines of business the master cannot
always remain, in person or by vice principal, in imme-
diate supervision of the servant; and it not infrequently hap-
pens that some unforeseen contingency arises, rendering it
necessary, in the master's interest, that the servant have tem-
porary assistance.   In many such cases it has been held that
the servant has implied authority to engage such temporary
service, and that the substitute or assistant, if not in the law
the employé of the master, is at least entitled to the same
measure of protection as is the servant or agent upon whose
request he rendered the assistance.   *Johnson v. Ashland W.
Co.,* 71 Wis. 553; *R. Co. v. Scott,* 71 Tex. 703 (10 S. W.
Rep. 298, 10 Am. St. Rep. 804); *Goff v. R. Co.,* 28 Ill. App.
529; *Sloan v. R. Co.,* 62 Iowa, 728; *Barstow v. R. R.,* 143
Mass. 535 (10 N. E. Rep. 255); *Marks v. R. R.,* 146 N. Y.
190 (40 N. E. Rep. 782); *Cleveland v. Spicer,* 16 C. B. (N.
S.) 399.

It is also held that the substitute or helper employed
and paid by the servant with the knowledge or acquiescence
of the master is not a trespasser or mere volunteer, and,
while engaged in the work of the master, the latter is bound
to exercise reasonable care for his safety.   *Rummell v. Dil-
worth,* 111 Pa. 343 (2 Atl. Rep. 355, 363); *Anderson v.
Guineau,* 9 Wash. 304 (37 Pac. Rep. 449).

While the master owes no duty to the intermeddler who
officiously interferes and undertakes to perform services with-
out request or employment, and while some courts are in-
clined to put in the same category those who perform ser-
vices at the request or order of a servant having no general
authority to employ or discharge assistants, the general con-
sensus of opinion seems to be that one who in good faith

enters upon the master's work at the request of a servant in apparent charge of such work is not a trespasser, but assumes for the time being the relation of a servant. As such servant, he occupies the same relation, and becomes subject to the same rules, including the operation of the fellow-servant rule, as do those who are directly employed by the master, even though he may not be entitled to recover wages. See cases already cited; also *Mayton v. R. R.,* 63 Tex. 77 (51 Am. Rep. 637); *Eason v. R. R.,* 65 Tex. 577 (57 Am. Rep. 606); *Osborne v. R. R.,* 68 Me. 49 (28 Am. Rep. 16). Stated from another standpoint, the master has quite often been held liable to third persons for injuries occasioned by the negligence of persons performing his work at the request or employment of a servant to whom such work was intrusted. *Booth v. Wister,* 7 Carr. & P. 66; *Haluptzok v. R. R.,* 55 Minn. 446 (57 N. W. Rep. 144, 26 L. R. A. 739); *Althorf v. Wolfe,* 22 N. Y. 355.

If there be any doubt as to the soundness of the doctrine laid down in any of the cited cases, it wholly disappears when the acquiescence or consent of the master in the act of his servant may be inferred from proved circumstances. If, for instance, the servant has been in the habit of exercising such authority from time to time without objection from the master, or has made use of an assistant or substitute so frequently or for such a period that the fact may fairly be presumed to have come to the knowledge of those in authority over him, and such practice has not been forbidden, then such acts on the part of the servant may properly be held to have been ratified, and ratification is equivalent to original authority. Directly in point, see *Haluptzok v. R. R., supra; R. R. Co. v. Scott, supra; Bradley v. R. R.,* 62 N. Y. 99.

In very many of the cases arising for judicial consideration the authority of the agent or servant in a given case arises less from the use of express language or the giving of express directions than from the general conduct of the

parties in relation to the business. 1 Am. & Eng. Enc. L. (2d Ed.) 959. Such authority may be implied from a single transaction. Story's Agency (7th Ed.) 959. But such inference is more readily and more surely drawn from a series of acts or a course of conduct. By ratification of past acts, others of a similar nature may be binding upon the principal or master on the ground of implied authority. Story on Agency (7th Ed.) section 55. In the Haluptzok Case the court says: " Such authority may be implied from the nature of the work to be performed, and also from the general course of conducting the business of the master by the servant for so long a time that knowledge and consent of the master may be inferred. It is not necessary that a formal or express employment in behalf of the master should exist, or that compensation should be paid by or expected from him."

In the light of these well-established rules of law, let us look at the case before us. The organization of the defendant's factory work is not clearly shown by the record. That

**2. EMPLOYMENT OF SUBSTITUTE BY SERVANT: authority; ratification; evidence.** part of the business carried on in this particular building seems to have been under the superintendence of one Rost, and in his absence the authority usually exercised by him was in the hands of one Clark. Defendant gave the work no personal supervision. At the time of the injury to plaintiff, Rost was sick, and Clark was the active superintendent. The plaintiff and others of the employés testify that Rost (and, in his absence, Clark) was the superintendent; that the hands employed in the building worked under the directions and orders of this superintendent. Boehler was himself employed by one Vogland, who, we may infer, had some sort of general supervision of the engines used in the various buildings owned by defendant. His office or headquarters was in a building at some distance from the factory, which he seldom visited; and the extent of his duty, so far as disclosed by the testimony, would seem to have been to keep

the engines and power in working order, and to employ engineers whenever it became necessary to do so, though there was nothing to show that his authority in this respect was exclusive. Indeed, the only evidence of his authority in this respect is Boehler's statement that Vogland employed him, and that he had seen him employ other engineers; while plaintiff offered, but, for some reason, was not permitted, to show that on other occasions such authority had been exercised by the superintendent. The actual, every-day operation of the engine was clearly under the control of Rost or Clark, according as either happened to be in the actual superintendence of the shop. He gave the orders when to start and when to stop the machinery, and when to increase or diminish the steam, and all such orders or directions as might be necessary for the proper and efficient utilization of the power for the use of the factory. The superintendent was the one representative of the company coming into daily and hourly contact with the engineer. He kept the engineer's time, and through him all the employés in the building, including the engineers, were regularly paid their wages.

At the time of the plaintiff's injury, Boehler had been engineer for about a year and a half. Soon after entering upon this work, Boehler, being obliged to leave for a few days, applied to Vogland to furnish a substitute during his absence. Vogland replied: "No, sir; when you want to get off for any cause, you will have to get a man to work in your place." Acting upon this authority, Boehler did then employ a substitute, who served several days. From time to time thereafter, when sick or for other reasons he desired to temporarily absent himself, he employed other substitutes. He enumerates at least three such occasions prior to the employment of the plaintiff. On such occasions he consulted the superintendent, Rost or Clark, and obtained consent to his absence, and to the substitution of the person employed by him in the engine room. The superintendent knew of the service being rendered by the substitute, and gave him

the usual and necessary orders about the operation of the power. The persons thus employed served from one or two to sixteen days at a time. They do not appear to have been entered upon the regular pay roll, but their time was credited to Boehler. On pay day the money for each person on the pay roll of the factory was inclosed in a separate envelope and sent by the defendant to the superintendent, who delivered it to the person for whom it was intended. On some of the occasions when Boehler had employed a substitute, Rost or Clark opened Boehler's envelope before delivering it, and divided the money between him and the substitute according to the service rendered by them, respectively. At other times the envelope and contents were delivered to Boehler, with directions to him to see that his assistant received his share of the money.

On December 8, 1899, Boehler, being sick, reported the fact to Clark, and informed him of his desire to put the plaintiff in his place for a few days. To this Clark assented, and on the following morning plaintiff took charge of the engine. Clark gave him orders in regard to his work. During the day he broke a fire iron, and took it to the superintendent, who had it repaired and returned to the engine room. On Monday, December 11th, he resumed the work, and continued until about 4 o'clock in the afternoon, when he was injured. During all of this time the superintendent of the factory knew of his presence, and accepted his services in forwarding the work of the factory. If these circumstances are not sufficient to go to the jury upon the question of express or implied authority of Boehler to employ a substitute, as well as upon the ratification of his acts in that behalf, it would be very difficult indeed to imagine a case strong enough to avoid a directed verdict.

The question whether plaintiff was employed and paid by Boehler in his individual capacity, or whether his employment is to be considered, in the law, as an employment by defendant, is not material, if the act of Boehler in bring-

ing him into the building and setting him to work was with
the defendant's express or implied consent, and of this there
was ample evidence for the consideration of the jury.　Upon
this point the Rummell Case, above cited, decided by the
Pennsylvania court, affords instructive reading.　There
the plaintiff was injured in the defendants' spikemill.　He
was not employed or paid by the defendants, but the " roller
boss " of the mills, who was paid according to the product
turned out by the machine in his charge, employed and paid
him as his assistant.　This was known to defendants, or was
a practice of such long standing that their knowledge might
be inferred.　While thus engaged, plaintiff was injured by
negligence chargeable to the defendants, and brought suit
for damages.　To the plea that the relation of master and
servant did not exist between the parties, and that the de-
fendants owed the plaintiff no duty by reason of such rela-
tion, the court replies:

He was employed by the roller boss, and paid by him;
but, whether he was directly in the defendants' employ, or
indirectly, as the assistant of Richards, he may be treated
as their employé.　He was engaged in the work of the de-
fendants, and the defendants were themselves operating the
mill.　*　*　*　The plaintiff was in the rightful discharge
of the duties of a valid employment, and the relation of
master and servant is fairly inferable from the proof, and
defendants are therefore bound to the performance of all the
duties and entitled to all the protection which that relation.
affords.

In *Sloan v. R. R., supra,* decided by this court, a rail-
road brakeman, desiring to be absent from his post of duty
for several days, obtained the consent of Sloan to take the
place until his return.　There was no employment or con-
sent thereto on part of the company, except such as might be
inferred from the fact that the plaintiff took up the work as
a brakeman, and continued therein for a week, with the
knowledge and acquiescence of the train conductor, who had
no general authority to employ brakemen.　In executing an

order given by the conductor, he was injured; and this court upheld his right to recover damages, saying:

> An intermeddler is a person who officiously intrudes into a business to which he has no right. The distinction between an intermeddler and a trespasser is not, in any case, very great. Under the circumstances of this case, if the plaintiff was an intermeddler, he was a trespasser. But as he was on the train, and discharged the duties of brakeman, for six days, with the knowledge or consent of the conductor, he was not · either. The train, when passing between stations and distant from any officer, is in charge of the conductor, and he has authority to eject such persons therefrom. So far from so doing, the conductor, availed himself of the services of the plaintiff, and required him to perform duties which were necessary and essential to the safe operation of the train. The regular brakeman was absent, and it is immaterial whether with or without cause. The conductor consented that the plaintiff should perform his duties.

The defendant exercised no personal supervision over the factory when plaintiff was injured. His superintendent in charge, laying out the work, directing its execution, controlling the operation of the power and machinery, keeping the time of the employés, paying their wages, was his *alter ego,* whose knowledge was his knowledge, whose consent was his consent. He is held, therefore, to have known that men employed by Boehler were in charge of the engine room for days and weeks at a time, and that such men were executing orders and performing service in his business, and under the direction and control of his foreman and superintendents. It would be grossly unjust to permit him to thus tacitly consent to such transactions, and reap the benefit of labor so performed, and then say: "I owe these persons no duty of care for their safety, and, if they see fit to thus serve my interest, they must take their chances of all concealed traps and dangers created by my negligence."

In our judgment, the plaintiff was entitled to have the case made by him submitted to the jury, and in directing a

verdict against him there was error. The judgment of the district court is therefore *reversed*.