## CLEMENS EDELBROCK v. MINNEAPOLIS, ST. PAUL & SAULT STE. MARIE RAILWAY COMPANY.[1]

January 18, 1924.

No. 23,559.

**Cook of bridge crew not in employ of railroad.**

The cook, hired and paid by a bridge crew in the employ of a railway company, is not an employe of the latter, the railway company having no right of selection and discharge nor any supervision and control of the cook. The mere fact that the company furnished a kitchen car, fuel and oil for the bridge crew, and assisted in the collection of board bills, does not affect the situation.

Action in the district court for Stearns county to recover $30,000 for the death of plaintiff's intestate. The case was tried before Roeser, J., who when plaintiff rested denied defendant's motion to dismiss the action and at the close of the testimony defendant's motion for a directed verdict, and a jury which returned a verdict for $7,000. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Reversed.

*James R. Bennett, Jr.*, and *John E. Palmer*, for appellant.
*R. B. Brower* and *J. B. Himsl*, for respondent.

STONE, J.

Plaintiff is the husband of Helen Edelbrock, deceased, and as administrator of her estate attempts by this action to recover damages for her death. Under the amended complaint, upon the theory

[1]Reported in 196 N. W. 807.

of which the case was submitted to the jury, recovery was sought under the Minnesota Employers Liability Act, chapter 187, p. 253, Laws 1915, under which contributory negligence is not a defense, but goes only in reduction of damages. That is, that statute applies the comparative negligence rule. There was a verdict for plaintiff, and defendant appeals from the order denying its blended motion for judgment notwithstanding or a new trial.

Mrs. Edelbrock died April 19, 1921, as the result of injuries received on April 4. From October 12, 1921, she had been the cook for one of defendant's bridge gangs. Her work was performed in a kitchen car furnished by defendant. The cooking was done on an ordinary kitchen stove, and the unfortunate lady came to her death as the result of burns caused by an explosion due to her own attempt to accelerate the kitchen fire by the application of kerosene poured onto it from a two gallon can.

It is charged that the kerosene used for the lights in the kitchen and bunk cars, and which was furnished by defendant, contained gasolene. The proof which sustains that charge is decidedly attenuated, so much so that, if it were the only issue, we would probably hold that, in the interests of justice, there should be a new trial. Plaintiff's only proof consisted of an alleged sample taken from the container from which came the oil which Mrs. Edelbrock attempted to use as kindling; but taken some weeks after that occurrence. The genuineness of that sample is very much in doubt, but that phase of the case presents a fact question which ultimately must be disposed of by a jury.

Was Mrs. Edelbrock an employe of defendant? We hold that she was not. Therefore, there must be a new trial, wherein the sole issues will concern the alleged negligence of defendant and the contributory negligence, if any, of Mrs. Edelbrock. If she were guilty of contributory negligence it is an absolute defense, whereas the jury was charged, and properly under the statute, that, it being assumed that there was some proof of a relationship of employer and employe, Mrs. Edelbrock's negligence, if any, was not an absolute defense, but partial only and to be considered upon the comparative negligence basis.

One Johnson, for a long time, had been the foreman of the bridge crew. He had no actual authority from defendant to hire cooks for the very simple reason that defendant was not hiring cooks for any of its bridge crews. The men boarded themselves. They could hire a cook, board at hotels or restaurants, or get their subsistence in any way which seemed best to them. The defendant furnished them with a bunk car and a kitchen car, fuel for their stoves and kerosene for their lamps. This particular crew, in common with normal men everywhere, preferred a woman's cooking. And so it came about that Mr. and Mrs. Edelbrock were not the first married couple that had been hired, the husband as a laborer, and the wife as a cook for the crew. The cook and her husband lived in the kitchen car, one end of which was partitioned off as their sleeping apartment.

We do not agree with counsel for respondent that there was any apparent or implied authority to hire a cook for the crew in such manner as to make the contract of employment binding upon defendant, or so as to make the cook its servant. But passing that, and assuming that the facts might have made a case of initial apparent authority, the situation, immediately made known to both the plaintiff and his wife, was as follows:

The cook's wage of $50 per month was paid, and the supplies consumed by the crew were purchased, out of a fund contributed by the men themselves. They decided what and how much to buy. It was for them to decide how frugally or how sumptuously they were to fare. The foreman hired the members of his crew and we assume he had the right to discharge them at will. As a matter of fact he hired both the Edelbrocks, but there is nothing in the evidence to controvert his assertion that he hired the wife for the men, as their employe, and not for defendant as its employe.

The cost of the food and its preparation were assessed against the members of the crew in proportion to the number of meals consumed by each. The money, including his wife's wages, was collected by Mr. Edelbrock himself, and he paid his wife her stated wage or retained it himself. He was completely her representative

in the matter, and whatever knowledge he had, obviously, was her knowledge also.

The company had no right to dictate, and did not attempt to dictate, to this bridge crew as to the choice of their cook. It possessed none of the powers of supervision and control typical of the employer's conventional relationship to his employe. It cannot be seriously suggested that defendant had any right to discharge a cook in the employ of the bridge gang. We do not overlook the fact that a cook might become so distasteful to defendant that his or her presence around its property would be no longer desired. In such case, the crew probably would be asked to find a new cook; but, in such a contingency, both the act of discharging the old cook and the hiring of a new one would be the act of the crew and not the defendant. The fact that they used their foreman as a convenient agent for communicating the fact of discharge to their old employe, and locating and selecting a successor, does not alter the situation simply because the foreman is a trusted employe of defendant. The fact that defendant furnished fuel and the kitchen car in which Mrs. Edelbrock did her work, certainly does not make her the employe of defendant. If work is done for a railroad by an independent contractor, who procures for his laborers' use the bunk cars of the railway company, that circumstance does not make the laborers the employes of the railway company.

In its facts the case is very much like Doyle v. Union Pac. Ry. Co. 147 U. S. 413, 13 Sup. Ct. 333, 37 L. ed. 223, where the fact that plaintiff occupied a section house belonging to defendant, boarded its men and was assisted by the defendant in collecting their board bills, was urged as evidence of a relationship of employer and employe. The Supreme Court held against that contention, stating [at page 422], that the fact showed that defendant

"Was not interested, in a legal sense, in the management of the boarding house, did not receive the board money, pay the expenses, take the profits or suffer the losses. The company could not call upon her for any account, nor could she demand payment from the company for any services rendered by her * * *. The fact that the company agreed to aid her in collecting what might be due her

from time to time by the boarders, by withholding moneys out of the wages payable to them by the railroad company, did not convert Mrs. Doyle into a servant of the company or change her relation to the company as a tenant at will of the company's house. Such an arrangement might equally have been made if Mrs. Doyle had been the owner of the house."

This comment applies precisely to the instant case and disposes of it, upon the issue of the relationship between defendant and Mrs. Edelbrock, adversely to the contentions of plaintiff.

Defendant had nothing to do with apportioning to the men the cost of their mess nor with collections from them, except that, when a man was discharged between pay days and had no money with which to pay his board bill, it would be deducted from his final pay check. In the instant case, where such board bill was charged on the payroll, it was charged expressly, not for the benefit of defendant, but for that of Clemens Edelbrock, who received the money and accounted for it as the "board boss."

The Edelbrocks were originally employed by foreman Johnson through an employment agency, the husband as a bridge carpenter and the wife as cook. We do not go further into the circumstances of that transaction, or a discussion of it in its bearing on the question of apparent authority, because the facts as we have stated them must have become known at once to both Mr. and Mrs. Edelbrock. If they were not fully known to the wife, they were to the husband, and, he being her agent in the premises, his knowledge was her knowledge.

The relationship of employer and employe is in essence a contractual one, Caron v. Powers-Simpson Co. 96 Minn. 192, 104 N. W. 889; Arterburn v. County of Redwood, 154 Minn. 338, 191 N. W. 924; 26 Cyc. 968. Here there is no evidence of contract as between Mrs. Edelbrock and defendant. If, when she was employed, she was by any chance under the impression that she was being hired by defendant, she speedily discovered that her real and only employers were the members of the bridge crew, among them her husband. He, as "board boss," saw to it that none of the men "jumped" their

board bills.   He paid for the supplies used by them, and retained from the "mess fund" the compensation for his wife.

The controlling question of employment cannot be decided otherwise, unless courts arrogate to themselves the power of creating a contractual relationship where the parties have expressly avoided it.   The problem is given illuminating discussion and the authorities to some extent collected and digested in a note beginning at page 912 of Annotated Cases, 1913B.   See also Aga v. Harbach, 127 Iowa, 144, 102 N. W. 833, 109 Am. St. 377, 4 Ann. Cas. 441.   Of course, as emphasized so often, the question is one of fact and consequently for the jury, where there is in a case any question at all. Here, we find nothing in the record making a question as to the relationship of employer and employe.   The evidence is all one way and in consequence there is no question at all.   It is proven to a finality that Mrs. Edelbrock was the employe of the bridge crew and not of defendant.   Therefore the order, insofar as it denies a new trial, is reversed.

It is so ordered.


Holt, J. (dissenting)

In my opinion the evidence justified a finding that the bridge crew foreman had apparent authority to employ a cook for the crew. Their work was such that a cook was necessary.   If the plaintiff's intestate had received her injuries previous to the first pay day, I think the jury could not well have found otherwise than that she was the servant of defendant.   There is no direct evidence that she knew whom her pay came from, nor, perhaps, is it a conclusive test of the relation of master and servant that the master pays the wage. Knowledge of the husband did not conclude her next of kin, her daughters.