JAMES SABERE, PLAINTIFF IN ERROR, v. BENJAMIN
ATHA & COMPANY, DEFENDANT IN ERROR.

Argued June 11, 1907—Decided December 4, 1907.

1. The mere fact that an employe was not informed that one of the probable results of striking a mass of steel with a sledge hammer might be the forcible disintegration of the steel and flying asunder of its particles does not render the employer responsible for an injury so received.

2. In the absence of notice to the contrary, a master has the right to assume that the experience of a servant and his knowledge of natural forces are adequate to his protection from the ordinary results of the operations of such forces incident to the employment the servant undertakes, and upon this assumption the master may safely act, not only at the inception of a servant's employment, but also at every stage of such employment until apprised by circumstances or notified by the servant that he is being called upon to act in matters that are beyond the range of his knowledge or experience.

On error to the Circuit Court.

This action was brought to recover damages for personal injuries sustained by the plaintiff while employed by the defendant at its iron foundry. One of the appliances there used by the defendant in the process of making steel was a large ladle into which molten metal was poured. This ladle, which is known as a bottom-pour ladle, had a hole in the bottom called a nozzle about four or five inches in diameter, and through this nozzle the molten metal was poured out of the ladle. Before the molten metal is poured into the ladle the interior is covered with a layer of sand or cement so as to prevent the metal from sticking fast to the ladle as it cools. This layer of sand or cement forms what is known as the "scull." After the metal is poured out the "scull" is knocked out of the ladle by means of a heavy sledge hammer. In the bottom-pour ladle the metal, after cooling, sometimes sticks to the nozzle, so that in order to loosen it it is necessary to turn

the ladle upside down and strike with a hammer on the metal which projects through the nozzle.

At the time of the plaintiff's accident he was engaged in striking with a sledge hammer the metal that was stuck in the nozzle of the ladle, and after striking the metal ten or twelve times a piece of steel broke off and struck him in the eye. The hammer, which was of iron or steel, weighed about thirty pounds, and the steel itself was what is known as manganese steel, which is at once harder and more brittle than the steel the defendant had been making up to about two months before the plaintiff was injured. There was no proof that proper tools and appliances had not been furnished by the defendant, whose negligence is put solely upon the ground that he did not inform the plaintiff as to the quality of the steel that was in the ladle and caution him that if he struck with a sledge hammer particles of the steel might break off and fly. The plaintiff was an adult and had for five years been continuously employed about the defendant's foundry in various capacities. At the close of the plaintiff's case the defendant asked for a nonsuit upon the ground, *inter alia,* that the accident was due to an ordinary risk or danger incident to the employment, which, if not actually known to the plaintiff, was so obvious that the danger was one of the risks of his employment. This motion was granted, the trial court saying: "It seems to the court that whether it be steel or whether it be stone or anything else, it is within common knowledge, whether the man is an Italian or a native-born American, that the application of great force and violence by one hard substance to another may result in a breaking, whether it chips or whether it is broken, and that these particles, whether they be called chips or not, may fly and hit a person with force. It seems to the court that whether the plaintiff was working upon brittle steel or upon the old steel he must be charged with knowledge of the natural laws sufficient to say that the application of great force to any substance is apt to result in splintering or breaking it, and if this substance is splintered or broken a piece will fly and hit him. I do not see how he has made out a cause of action, particularly in view of the language of the Court of

Errors and Appeals in which it says that it is a matter of law that the result of striking a steel tool with a hammer seems essentially an obvious danger."

Before Justices GARRISON and SWAYZE.

For the plaintiff in error, *Samuel Kalisch, Jr.*

For the defendant in error, *Collins & Corbin.*

The opinion of the court was delivered by

GARRISON, J. The judgment of nonsuit directed at the trial is affirmed upon the ground then given by the trial court. The fact that some kinds of steel are more frangible than other kinds does not place the present case outside the pale of the doctrine of obvious risk. The extent of the danger incurred by striking steel against steel may vary with circumstances, but the essence of the risk remains the same, viz., that stated by the Court of Errors and Appeals in the case of *Tompkins* v. *Machine Company,* 41 *Vroom* 330, where it is said : "That the result of striking a steel tool with a hammer of steel would cause chips to fly, seems essentially an obvious danger." In view of this concrete characterization of the occurrence by which the plaintiff was injured, his claim that his employer ought to have assumed that he was ignorant of the danger thus naturally attendant upon his work cannot be supported. The mere fact that an employe has not been informed that one of the probable results of striking steel against steel might be the forcible disintegration of the metal and the flying asunder of its particles does not render the employer responsible for an injury so received by the servant.

This was in principle held in the case of *Murphy* v. *Rockwell Engineering Co.,* 41 *Vroom* 374. The rule deducible from the opinion of Justice Dixon in this case is that in the absence of notice to the contrary a master has a right to assume that the experience of his servant and his knowledge of the natural forces involved in the service he is about to undertake are adequate to his protection from the ordinary results of

the operation of such forces. The ground for the rule thus declared rests upon the necessity of some presumptive understanding between master and servant as to the experience of the latter and his knowledge of ordinary facts and forces that are involved in the proposed employment when nothing expressly is said upon the subject. The rule itself proceeds upon the ground that it is entirely reasonable to require the servant, who knows what his experience has been and what his knowledge is, to rely upon the facts thus within his knowledge in deciding for himself whether he can safely engage in a given employment; whereas, it would be wholly impracticable to require the master to catechise every servant as to his past experience and the extent of his knowledge as to common facts in order to decide for the servant whether the latter's experience and knowledge afforded him adequate protection against the ordinary incidents of the proposed employment; and these considerations were deemed sufficient to cast upon the servant the responsibility either of reaching a decision for himself upon his own estimate of his knowledge or experience or else of imparting to his proposed employer such facts as would negative the assumption of such responsibility. The practical rule therefore is that when nothing to the contrary is said by the servant or known to the master, the latter may assume the existence of such facts within the servant's knowledge as would be implied by his undertaking a given employment. If the servant has not the experience and knowledge involved in this presumption it is his duty in some way to impart these facts to the master. "This duty," as held by the opinion cited, "rests upon him not only when he enters into employment, but also at every stage of his service, requiring him to refuse to act in matters beyond the range of his experience or else to take the risk of the dangers naturally incident to his act. The employer cannot be held responsible for such dangers in the absence of notice that the experience of the workman was less than his contract implied." This obviously must be so unless it could be assumed that a servant had a better opportunity to estimate his fitness for a given employment before he entered upon it than he had after, as in the

present case, many years of actual engagement in and about the work of the employer, which would be manifestly absurd.

Following the rule laid down by Justice Dixon in the case cited, in the reasoning of which we fully concur, the nonsuit directed in the present case will be affirmed.