FRANK W. MEYERS, Appellant, v. BENNETT AUTO SUPPLY COMPANY et al., Appellees.

**MASTER AND SERVANT:    Duty to Warn—Self-Evident Dangers.**
The master is under no duty to warn a servant of dangers self evident to anyone, skilled or unskilled.

PRINCIPLE APPLIED: Plaintiff, 33 years old, with good eyesight, had been a competent brick layer for 10 years. He was laying brick and terra cotta over the face of a concrete building. Certain "cups" for electrical fixtures were nailed into the forms and after the concrete hardened and the forms were removed four nails protruded, in part, from the cups. These had to be broken off in order to lay the terra cotta ornaments. Plaintiff came to some of these nails for the first time in his experience, and asked the foreman what to do. The foreman said, "Take your hammer and knock or cut them off." Nothing else was said. It was not in the line of a brick mason's work to break off nail ends. Plaintiff, with his own hammer, struck one of the nails which broke, flew into his eye, and destroyed it. *Held,* the *task* and the *tool* were of such elementary simplicity that no duty arose to warn or instruct.

*Appeal from Woodbury District Court.—*HON. JOHN F. OLIVER, Judge.

MONDAY, MARCH 15, 1915.

ACTION for damages for negligence resulting in injury

to an employee. At the close of plaintiff's evidence there was a directed verdict for the defendant.—*Affirmed.*

*Shull, Gill, Sammis & Stilwill,* for appellant.

*L. H. Salinger,* for appellees.

EVANS, J.—Plaintiff was a brick mason and was in the employment of the Lytle Construction Company, engaged as a brick mason in the construction of a building for the Bennett Auto Supply Company. He broke off. the end of a nail by striking it with his mason's hammer. The broken piece struck his eye and destroyed it. · The specified grounds of negligence are that he was required to do something outside the range of his regular work and was not furnished with a proper tool therefor nor warned of the danger inhering in the task. The salient facts are gathered concisely in the briefs of counsel. We quote as follows from appellant's brief:

## STATEMENT OF FACTS.

On or about the 9th day of September, 1912, plaintiff was working as a brick mason in the employ of the defendants in the erection of a concrete, brick and terra cotta building. In the face of said building galvanized iron boxes or cups were to be cemented. These boxes or cups are held in place in the wall by means of soft wire nails or spikes which project outward from the wall until concrete is poured into and about the box and hardened, when that part of the spike which projects is removed or broken off so as to permit covering the box or cup with a terra cotta ornament in which the lights are set. It is the business of the electricians wiring the building to fasten the cups or boxes with the nails and when the concrete has set to remove or break off the nail ends.

For the purpose of removing or breaking off these spike ends pliers are used. The masons then put on the terra cotta ornaments. The plaintiff was a brick mason by trade and

had no experience in breaking off nails or spikes: it is not the line of a brick mason's work to break off nail ends.

On the day in question the plaintiff in the course of his work came across some of the boxes from which the spikes had not yet been removed, and asked defendant's foreman what to do about it; he was negligently instructed to knock or cut them off with his hammer, without any warning as to the dangers incident thereto or instructions as to the manner of removing them with a hammer, which when he did, at the second stroke, part of the spike broke off and struck him in the left eye, blinding it and destroying the entire eye.

The following from appellees' brief amplifies the foregoing:

Plaintiff at the time of his injury was 33 years old. He had been a bricklayer about ten or eleven years. Before that he had tended a bricklayer for about four years, and had done nothing else during those years. Before that he lived on a farm. His eyesight was perfectly good and he describes himself as an equipped, competent and efficient workman.

The building on which he received his injury was constructed of concrete, over which was laid brick and terra cotta. At intervals in the concrete, iron cups were set with their sharp edges flush with the concrete. To hold them in place, they were nailed from behind, and when the forms were removed, four wire nails would protrude outward from each cup, about an inch and a half or a quarter beyond the surface of the concrete walls. These cups were so placed for the purpose of introducing conduits carrying electric light wires, and each cup was to be overlaid with a terra cotta medallion. The terra cotta came right up against the cup, and the nails were in the way of its being so laid. They were in the solid concrete and could not be pulled out.

Plaintiff had worked on this building before, at the same kind of work for about three weeks, but had gone away and had just returned the morning of his injury. He had worked

on concrete buildings before, but never on one with the *lights* sticking out in boxes like this, and though he laid medallions over boxes on this building before, there were no nails sticking from them. He was employed as a brick mason to lay brick and terra cotta.

At the time of the accident, plaintiff was working with one Levolier, and came upon the box at which he received his injury, and was unable to fit the terra cotta on because of the projecting nails. Not knowing but that the nails might have some purpose, he called to the foreman and said "Johnson, there is some nails here, what do you want me to do with them," and Johnson said "Take your hammer and knock or cut them off." This was in the hearing of his fellow workman, Levolier, and no further instruction as to the work about to be entered upon was given by anyone. Levolier proceeded to cut off one of the nails with his hammer. It was a wire nail and a hammer like that used by plaintiff. He was on plaintiff's right side, and the box was between them. Levolier struck his nail and cut it off and received no injury. Plaintiff was standing about two feet from the cup, which was shoulder high, when he struck the nail. He hit it each time with his right hand and with the head of the hammer, and at the second stroke, the nail broke at the point where he had bent it over the edge of the cup and flew into his eye.

Plaintiff's hammer, he says, he used to cut brick and terra cotta. When he struck terra cotta with it, pieces of the terra cotta would probably fall off, according to where he hit it, but they would not fly up in the air, though that would be a good deal according to how you would hold it to cut it. In his work as a brick mason, he had never used his hammer to remove the nails sticking out from the cement or brick. He had used it to remove "obstructions," meaning, he says, cement, boards or brick sticking out. He had used it also to drive in nails sticking out of houses he was veneering with brick.

These statements are fairly consistent with each other

and are sufficient indication of the state of the record. We may add the following excerpts from the testimony of plaintiff:

"I knew it was going to break off, and that is what I struck it for. The only thing I didn't know at the time was that it might fly up. I knew that the piece that broke off had to go somewhere."

"When Levolier struck his nail it flew in a different direction than when I struck mine. He struck his on one side and I struck mine on the other."

"Re-direct. The nail Levolier hit broke off. It was a wire nail. When I hit it the purpose was to cut it off so it would be out of the road."

The argument for plaintiff is that he was only a mason and was ignorant of the danger inhering in other lines of work and that the breaking of the nail in question was outside the range of his work and therefore of his experience. We think it quite inconceivable that a man could become a skilled mason without learning to drive nails, or to bend and break them. The hammer that he used was his own. That it was efficient to accomplish the breaking is conceded. That the broken end of a nail will fly in the direction toward which it is struck is an obedience to the same law that operates upon a piece of concrete or brick under the same circumstances. It was self-evident to any workman whether skilled or unskilled and no amount of skill and experience could make it more evident. The employer could have no reason to believe that the plaintiff did not know it. Therefore no duty to warn arose. The fact that pliers could have been used is not controlling. The task and the tool were of elementary simplicity. Instruction could have added nothing. We think therefore that the verdict was properly directed and the judgment below is—*Affirmed.*

1. MASTER AND SERVANT: duty to warn: self-evident dangers.

DEEMER, C. J., LADD and PRESTON, JJ., concur.