DAN W. HASKELL, Appellant, v. L. H. KURTZ COMPANY, Appellee.

MASTER AND SERVANT: Warning and Instructing Servant—
1 Self-Evident Dangers. A master is under no duty to warn a servant of dangers self-evident to anyone, skilled or unskilled.

PRINCIPLE. APPLIED: Plaintiff was employed in a shipping department, but, on the occasion in question, was directed to wash the second story windows. He knew where he could get all that was necessary to do the washing. From the inside of the room, he washed several windows in perfect safety by raising the lower and dropping the upper sash. The upper sash

of the last window was so gummed with paint that he could not get it down with his hands, and the lower sash, though hung with weights, did not remain stationary when raised. *He made no attempt to get a chisel or other suitable tool with which to lower the upper sash.* He raised the lower sash, stepped out upon a 6-inch ledge, took hold of the lower part of the upper sash with his left hand, and proceeded to wash the upper sash with his right hand. When in this position, the lower sash, from its own weight, commenced to descend. This is the first time he knew that the lower sash would not remain stationary. His left hand was about to be caught by the descending sash, and he did not have time to release his hold and grab the descending sash. The descending lower sash broke his hold on the upper sash. Result, a fall and injury. *Held,* plaintiff (a) was guilty of contributory negligence, and (b) the danger was so self-evident that no duty devolved on the master to warn.

**NEGLIGENCE:** Contributory Negligence—Self-Evident Place of 2 Danger—Safety Appliances. A servant may not escape guilt of contributory negligence, when he deliberately places himself in a self-evident place of danger, because of the lack of safety appliances which he made no effort to secure, and which evidently might have been had for the asking.

    PRINCIPLE APPLIED:    See No. 1.

**MASTER AND SERVANT:** Warning and Instructing Servant— 3 Change of Employment—Effect. Merely directing a servant to do that which he was not employed to do imposes no duty to warn of the dangers which may be encountered. *The character of the work* determines whether the master is under a duty to warn.

    PRINCIPLE APPLIED:    See No. 1.

*Appeal from Polk District Court.*—W. H. McHENRY, Judge.

SATURDAY, MAY 12, 1917.

REHEARING DENIED SATURDAY, SEPTEMBER 29, 1917.

ACTION to recover damages on account of personal injuries suffered by plaintiff while in the employ of the defendant, alleged to have been due to the negligence of the defendant, to which no negligence on part of the plaintiff

contributed. A verdict for defendant was directed, and this is an appeal from that order.—*Affirmed.*

*Woods & Cubbage,* for appellant.

*Miller & Wallingford,* for appellee.

SALINGER, J.—I. A careful analysis of the errors relied upon for reversal, when made in the light of the whole record, narrows what we have for decision. Concede, for present purposes, that washing windows was not within the scope of the plaintiff's employment. That is not material, if it appears that he did wash all but one of the windows without injury or danger of injury, and but for his own fault could have washed all in safety. Concede the abstraction that the employer must furnish a safe place to work, must warn and instruct, and must furnish such proper tools and appliances as are required to avoid the dangers of employment, and that, therefore, abstractly speaking, evidence that there are such tools and appliances should be received. The fact remains that all but one window was washed in safety, though no instruction or warning was given and no special safety appliance nor requisite tools furnished. The injury to plaintiff came from a fall while he was washing a particular window. In washing this window, he did not pursue the method which he had employed in washing those on which he did his work without injury and in safety. If he had used the same method throughout, he would have suffered no injury, though neither warned nor instructed, and though not furnished with special tools or safety appliances. His complaint narrows to a claim that, when he reached the window whose washing led to his injury, he was unable to use the methods that had proved safe in washing the other windows, and that his inability to continue the safe

1. MASTER AND SERVANT: warning and instructing servant: self-evident dangers.

method was due to the negligence of the defendant, and that his fall is traceable to that negligence without contribution thereto on his part. Reduced to its lowest terms, his complaint is that said one window was kept in a condition that made it perilous to wash it, in the absence of warning, instruction and the furnishing of proper tools and safety appliances, and that no safe place was provided wherein to do the work of washing said window. It may be conceded again, for the sake of argument, that the work of plaintiff was not done in a safe place; that a warning would have made plaintiff more careful; and that, had he had certain safety appliances, he would have suffered no injury, though not warned and though working in an unsafe place. But if it be true that plaintiff chose an unsafe work place when he might have refused to work unless furnished a safe one, or true that he was reasonably able to obtain a safe place to work in and chose to work in an unsafe one, or that, were it not for his fault, he would have suffered no injury, though not warned or instructed, and though no tools or safety appliances were furnished, then he must fail of a recovery, without inquiry into the fault of defendant.

1-a

Passing these generalities, we address ourselves to the concrete situation. We agree with appellant that, when he was directed to wash windows at all, this amounted to an instruction to wash the outside as well as the inside of the sash. When he reached the window whose washing caused his injury, he found the upper sash stuck tight with paint, and found or believed himself unable to lower it. If he had been able to lower it, he could have washed the outside sash from inside the room, and washed it in perfect safety, even as he had by the same method washed others. He made no attempt to secure any tool to aid him in lowering this sash. What he did do is thus stated by himself:

"I saw that I couldn't get it down to reach over from the top, so I assured myself that I could get a good hold of it. The window was in two sashes, which were hung on weights and balanced in such a manner that the upper sash would, or at least should, remain in the position in which it is left until it is moved; and the lower sash when raised would operate in the same manner. To all appearances, the lower sash was normal. I raised it up far enough to climb to a position on the ledge to which I must get to do the work, raising it (the lower sash) as high as it was necessary to climb out."

When he got out, he stood on a cement ledge five or six inches wide, and held onto the lower part of the upper sash with his left hand and worked at the upper sash with rags held in his right hand. He continues:

"The lower sash began to slide down, and I was standing and had my hand up and I couldn't reach it in time to stop it without letting go the hold I had. The window brushed down past my fingers. Until the time it reached the bottom, it had pushed my fingers from the upper sash and left me with no purchase and with but a small space for my feet, and I started to fall, and when I started to fall, I fell away from the window, caught myself in time to turn and light on my feet, and that is all I know. The lower sash of the window began to slide down, and I was standing and had my hand up, and I couldn't reach it in time to stop it without letting go the hold I had. I put my fingers under the edge of the upper sash, and that some way this inside window slipped down  *  *  *  with my fingers in there between. They were just about touching the glass. Whether or not my fingers did hold the inner sash from coming down depends on what the pressure on the inner sash might be.  *  *  *  I did not turn around; I never let go my hold for an instant. I could have let go with

one hand and taken hold of the bottom of the window sash, but I didn't do that."

II. Assume, for the sake of argument,

**2. NEGLIGENCE:** contributory negligence: self-evident place of danger: safety appliances.

that the employer was negligent in keeping the upper sash so that it could be moved down only by the aid of some tool, and in keeping the lower sash in such condition that, when raised, it would not stay up. On this assumption, plaintiff would have suffered no injury if there had not been this negligence. But if .the plaintiff was negligent in going where he did and attempting to do his work from where he placed himself, then the assumed negligence of the employer becomes at once immaterial. That is to ·say, the plaintiff cannot recover ·even though the defendant was in said respects negligent. The narrow question at this point is whether the plaintiff is guilty of contributory negligence. In essence, his avoidance is: (1) That the work done by. him was without the ·scope of his employment, which was to work in the shipping room of defendant; (2) as to work outside of that scope, it was the duty of the employer to give him due warning and instructions of perils that plaintiff would or might encounter in doing such work; (3) the employer failed in his duty to furnish proper tools and appliances which would have safeguarded plaintiff against such perils.

Washing windows was not within the

**3. MASTER AND SERVANT:** warning and instructing servant: change of employment: effect.

scope of the original employment of the plaintiff. But the naked fact that, upon request of the employer, an employee consents to do what he was not originally employed to do, imposes neither the duty to warn or instruct, nor to furnish safety appliances. This duty does not exist because of change of employment. It arises because the scope of the new employment is of such character as that there should be warning and furnishing

of proper tools and safety appliances. If the new employment is not hazardous, needs no special skill or appliances, and involves nothing in the way of danger that is not self-evident to all, if there be danger, this duty cannot arise merely because the employment was changed. If one employed to keep books be requested to wrap up groceries, and engages in that work, there is no requirement to warn or instruct against peril, nor to furnish tools and appliances to safeguard against danger. Where there is no danger, or none not as apparent to any employee as it is to his employer, the duty does not arise, because the reasoning that formulated the duty is inapplicable. A request to take on a different employment and acceding thereto makes, for the purposes of this rule, an original employment. If, on an original employment, there would have been no duty to warn and to furnish appliances, there is no such duty as to a new employment created by changing a former one by mutual consent. The material thing is not that a different employment was entered into, but the nature of that new employment.

This plaintiff is an adult of more than average intelligence. When he found a window that would not lower, no warning given in advance would have made that fact more patent. No skill or experience was required to bring home to him that he was unable to lower the sash. No advance warning would have made clearer than it was to any human being with ordinary faculties and power to reason that it was dangerous to meet the inability to lower the sash by stepping upon a 6-inch ledge placed just below the second story of a building. Assume that plaintiff could not foresee that when he did go upon the ledge the lower sash might or would fall. If he had done what he reasonably could do when he found the upper sash immovable, the tendency of the lower sash to drop would not have affected him. His care or want of care must be dealt with at the point when

he went upon the ledge, and relied upon the hold on the
sashes which he took.  While he claims that the offer to
furnish him appliances was very limited, it appears that he
was told "to get what he needed.  He knew where it was."
The man sent to work on the same job says, as a witness
for plaintiff, that the one who directed them to do the work
did not tell them where to get what was needed "because
we knew where to get everything that was necessary to
wash the windows.  We knew what we wanted and got it."
It appears, however, that all that they got was a couple of
buckets, some rags and towels, some soap and some Bon
Ami.  It is conceded that the upper sash could have been
lowered by some simple instrument usable as a pry or lever,
such as an ordinary chisel, and it is answered that plaintiff
was not a carpenter.  Any adult of average intelligence
must be charged with knowing, though not a carpenter, that
a sash stuck by paint could be lowered by inserting a sim-
ple edged tool where it would act at a lever.  We may con-
cede that plaintiff was not negligent in failing to provide
himself with such tool in the beginning.  But when he found
the condition the upper sash was in, it is doing no violence
to reason to hold that he knew without warning or special
experience that such a levering would, in all probability,
lower the upper sash so that he might wash it safely as he
had others.  Why should he have a recovery because he
refrained from asking for such a tool, and instead elected
to place himself in a dangerous position?  Assume that
the highest degree of care would have induced the employer
to furnish in advance appliances that insure absolute safety
in washing these windows.  What prevented the plaintiff
from refusing to place himself in a self-evident danger in-
stead of demanding such appliances before proceeding fur-
ther with his work?

We are constrained to hold that one who finds that
he cannot lower a window so that he may wash the same

from inside the room, deliberately steps upon a ledge six inches wide, from which a fall to the street below will work great injury, with no precaution save the hold which plaintiff took, is in no position to recover for an injury which results, even though, had there been due care on the part of the employer, the plaintiff would have had no occasion to leave safety on the inside for clearly apparent danger on the outside. We question whether there was any evidence to go to a jury on the issue that the lower sash was in fact negligently hung; but we do not go into that question, because we are proceeding, in effect, on the assumption of such defect, by making this decision turn upon the presence or absence of contributory negligence.

Almost every conceivable phase of the law of negligence, contributory negligence, assumption of risk, duty to furnish safe place, duty to furnish proper appliances, and duty to give adequate warning, is exhaustively presented by both parties. But there stands out that the verdict was directed because the trial court believed plaintiff had failed to prove that he was free from contributory negligence, and that, if this ruling is justified, we have no occasion to go beyond so finding. Little in the briefs has been helpful in solving this controlling question, and we have been forced to an independent investigation which seems to us to sustain the order below, and upon which investigation we find this:

It must appear that the master knew of or ought to have known of the danger, and that the servant did not know and had not equal means with the master of knowing of such danger by ordinary care. *Crown Cotton Mills v. McNally*, (Ga.) 51 S. E. 13. One employed to work in a saw mill is not entitled to be warned unless the employer knows or should know that warning is necessary. *Sladky v. Marinette Lumber Co.*, (Wis.) 83 N. W. 514. The duty to warn and instruct even with respect to the use of machin-

ery extends only to those dangers which the master knows, or has reason to believe, the servant is ignorant of. *Stodden v. Anderson,* 138 Iowa 398; *McCarthy v. Mulgrew,* 107 Iowa 76; *Kerker v. Bettendorf Metal Wheel Co.,* 140 Iowa 209; *Johanson v. Webster Mfg. Co.,* (Wis.) 120 N. W. 832. We said, in *Mericle v. Acme Cement Plaster Co.,* 155 Iowa 692, that, before a master is required to warn a servant, especially an adult, it must appear that the servant, because of his inexperience or otherwise, was without knowledge of the perils about to beset him, and also that the master is aware of such want of information or has reasonable grounds to believe it is wanting. Failure to give warning and instruction will not base a recovery, unless it appear that the servant had not equal means of knowing with the master. *Harte v. Fraser,* 130 Ill. App. 494; *Pinkley v. Chicago & E. I. R. Co.,* (Ill.) 92 N. E. 896; *Hendrix v. Vale Royal Mfg. Co.,* (Ga.) 68 S. E. 483; *Ahern v. Amoskeag Mfg. Co.,* (N. H.) 71 Atl. 213. We said, in *Hanson v. Hammell,* 107 Iowa 171, at 176, that the well-settled rule is that, if the employee knows, or may reasonably be supposed to know, the dangerous character of the temporary work to which he is called, the employer is not negligent in requiring the work without explaining its character. And we cite *Wormell v. Maine Cent. R. Co.,* (Me.) 10 Atl. 49; *Rummell v. Dillworth,* (Pa.) 2 Atl. 355; *Cahill v. Hilton,* (N. Y.) 13 N. E. 339; and *Newbury v. Getchel & Martin Lbr. & Mfg. Co.,* 100 Iowa 441.

In *McCarthy v. Mulgrew,* 107 Iowa 76, the holding is that the duty to warn and instruct does not arise as to dangers known to the servant, or so open and obvious as, by the exercise of ordinary care, he would have known of them. *Kerker v. Bettendorf Metal Wheel Co.,* 140 Iowa 209, is that, where a person of mature years undertakes any employment, the master may assume that he has, or claims to have,

sufficient experience to know and appreciate the dangers ordinarily incident to the undertaking. We say, in *Harney v. Chicago, R. I. & P. R. Co.*, 139 Iowa 359, that, unless something suggests to the master that a warning is necessary, he is justified in acting on the assumption that the servant understood the dangers to which he was exposed, and would take appropriate precautions to safeguard himself. In the case of an adult of apparently usual intelligence, the employer may assume, unless informed, to the contrary, that he has common knowledge, and need not give specific warning. *Johanson v. Webster Mfg. Co.*, (Wis.) 120 N. W. 832. In *Whalen v. Rosnosky*, (Mass.) 81 N. E. 282, plaintiff, a bright boy 17 years old, employed as an errand boy, was injured while attempting to open some wooden packing cases with a hammer and a hatchet, which are proper tools for such work. His employer told him he could get the cover off quicker by hitting the hatchet under the cover than by the method which he was employing. After a few strokes, a piece of steel flew off and injured plaintiff's eye. He was given no warning of the danger, but it was held that there was no duty to warn, because the work was one of the common operations of everyday life, and free from complexity.

There need be no warning against what should be evident to one possessed of ordinary intelligence. So it was held that the failure to instruct an adult servant of average intelligence as to the manner in which he should use a wrench in screwing nuts on a rod so as to avoid falling in case the wrench should break, is not negligence. *Garnett v. Phoenix Bridge Co.*, 98 Fed. 192. And so of a failure to inform that a probable result of striking a mass of steel with a sledge hammer might be the flying asunder of particles of steel. *Sabere v. Benjamin Atha & Co.*, (N. J.) 68 Atl. 103.

Though there was change of employment, there is no liability for injury resulting from causes open to the observation of plaintiff which it required no special skill and training to foresee were likely to occasion him harm. *Cummings v. Collins,* 61 Mo. 523, approved in *Hanson v. Hammell,* 107 Iowa, at 176; and see *Cole v. Chicago & N. W. R. Co.,* (Wis.) 37 N. W. 89. There is no case for the plaintiff where his evidence fails to show that the work directed to be done required more skill or knowledge than he possessed. *St. Louis R. Co. v. Austin,* (Tex.) 72 S. W. 212. Change of employment alone is not sufficient. The change is immaterial, unless there are dangers incident to it which, in consideration of his known inexperience or some matter of occult nature, the master should have pointed out to him and did not. *Ft. Smith Oil Co. v. Slover,* (Ark.) 24 S. W. 106. In *White v. Owosso Sugar Co.,* (Mich.) 112 N. W. 1125, a laborer in a sugar factory was called from his regular work to aid in raising an iron plate; he and a colaborer lost control of the plate and a corner passed into the shaft, where it was struck by a descending bucket, injuring the laborer; and it was held that, though the work may have been outside the scope of plaintiff's employment, there was no negligence in failing to warn him of the danger resulting from the plate's being struck by the buckets.

In *Meyers v. Bennett Auto Supply Co.,* 169 Iowa 383, plaintiff had been a competent bricklayer for ten years, and was laying brick and terra cotta over the face of a concrete building. Certain "cups" for electrical fixtures were nailed into the forms, and after the concrete hardened and the forms were removed, four nails protruded in part from the cups. These had to be broken off in order to lay the terra cotta ornaments. Plaintiff came to some of these nails for the first time in his experience, and asked the foreman what to do, and the foreman said, "Take your ham-

mer and knock or cut them off;" and nothing else was said. It was not in the line of a brick mason's work to break off nail ends, but plaintiff with his own hammer struck one of the nails, it broke, flew into his eye and destroyed it, and we hold that the task and the tool were of such elementary simplicity that no duty arose to warn or instruct, and say:

"That the broken end of the nail will fly in the direction toward which it is struck is an obedience to the same law that operates upon a piece of concrete or brick under the same circumstances. It was self-evident to any workman, whether skilled or unskilled, and no amount of skill and experience could make it more evident. The employer could have no reason to believe that the plaintiff did not know it." Further, "The task and the tool were of elementary simplicity. Instruction could have added nothing;" and the master was under no duty to warn a servant of dangers self-evident to anyone, skilled or unskilled.

It follows from what has been said that the order of the district court must be—*Affirmed*.

GAYNOR, C. J., LADD and EVANS, JJ., concur.