RUTH HALLER, Appellant, v. QUAKER OATS COMPANY, Appellee.

**MASTER AND SERVANT:** Scope of Employment—Voluntary Departure—Custom—Effect. A servant may not voluntarily step aside from his known and understood line of employment, without the consent of the master, and do an unauthorized act, and, when injured, obtain any benefit by the plea that he

·did the unauthorized act in the manner in which it was customarily done by those who were authorized to do it.

PRINCIPLE APPLIED: Pasteboard forms passed through a gluing machine, where they were partly glued by the operator in charge of the machine, thence along a spout to a slowly moving belt which passed over a table, and plaintiff, a girl 12 years and 6 months old, *understood* that her *only* duty was to stand at this table and "drop coupons into the moving cartons and keep the boxes going," and that no duty devolved upon her *until the boxes reached her.* The newly glued forms would at times come apart *while on the way to plaintiff's table,* and would stop in an elbow of said spout, which elbow was 76 inches from the floor and directly over plaintiff's head. In this elbow was an unguarded, triangular opening, with sides · some 2 or 3 inches long. When the boxes stopped in the elbow, they were customarily loosened, by those charged with the duty, by tapping upon the spout or by inserting the fingers into said opening and touching the boxes. This loosening was no part of plaintiff's duty, and she so understood. By standing on her tip-toes, plaintiff could just touch the elbow. To get her fingers into the opening, it was necessary for her to jump. Prior to, and even on, the third day of plaintiff's employment, other employees relieved the stopping of boxes in this elbow, but on said third day, when the boxes stopped in the elbow, plaintiff. without being told by anyone to relieve the stoppage, jumped three times in an effort to get her fingers into said opening. In the third jump she succeeded, but also cut off part of her finger on the angle formed by the opening. Plaintiff was the only person who had ever been injured by putting their fingers in said opening.

*Held* that it was immaterial that plaintiff did the unauthorized act in the customary way.

*Held* that said "pipe" was not a "machine," within the meaning of the Factory Act (Section 4999-a2, Code Supplement, 1913).

*Held* that, if the pipe be conceded to be a dangerous machine, the statute had no application, because of the voluntary departure by plaintiff from her line of employment.

*Held* that there existed no duty to warn plaintiff of these dangers outside her employment.

MASTER AND SERVANT: Factory Act—Voluntary Departure From Line of Employment—Dangerous Machinery. The prohibition

in the Factory Act against permitting a child under 16 years of age to operate dangerous machinery has no application to a case where a child under said age, and of average intelligence, voluntarily departs from his known and understood line of duty, without the consent of the master, and is injured while operating such dangerous machinery.

PRINCIPLE APPLIED:  See No. 1.

MASTER AND SERVANT:   Factory Act—Dangerous Machinery—
3  What is Not Dangerous Machinery.   An ordinary stationary
· galvanized iron pipe, used for conveying pasteboard boxes, with a triangular opening in said pipe, is not a "machine" within the meaning of the Factory Act prohibiting a master from permitting children under 16 years of. age to operate such machinery.

PRINCIPLE APPLIED:   See No. 1.

MASTER AND SERVANT:   Place For Work—Dangerous Machinery
4  —Proximate Cause.  The plea that plaintiff's place of work was surrounded by dangerous machinery is entirely immaterial when such machinery was in no manner the cause of plaintiff's injury.

MASTER AND SERVANT:   Warning and Instructing—Non-appre-
5  hended Dangers.  The duty of a master to warn and instruct does not exist as to dangers which the master has no reason to apprehend, or as to dangers just as obvious to the servant as to the master.

MASTER AND SERVANT:   Warning and Instructing—Voluntary
6, 8  Departure From Line of Employment.  A master is under no obligation to warn and instruct a child of some 12 years of age, and of average intelligence, against dangers wholly aside his employment, as known and understood by the child, on the assumption that such minor may voluntarily depart, without the master's consent, from his line of employment and encounter such dangers.

PRINCIPLE APPLIED:   See No. 1.

NEGLIGENCE:   Evidence—Contributory Negligence as Bearing on
7  Defendant's Negligence.  That plaintiff was wholly free from contributory negligence is no evidence that defendant was negligent.

**MASTER AND SERVANT:** Warning and Instructing—Voluntary
6, 8 Departure From Line of Employment.

  PRINCIPLE APPLIED: See No. 1.

**MASTER AND SERVANT:** Factory Act—False Representation
9   as to Age—Effect. A minor, under 14 years of age and of
    average intelligence, who obtains employment in a manufac-
    turing establishment by false representations as to her age,
    may not claim absolute liability on the part of a master who
    employs her in good faith and without being put on inquiry
    as to her age, even though Section 2477-a, Code Supplement,
    1913, absolutely prohibits such employment.

*Appeal from Linn District Court.*—W. N. TREICHLER,
Judge.

THURSDAY, OCTOBER 25, 1917.

THE plaintiff alleges that, when she was 12 years and
6 months of age, she was injured while in the employ of
the defendant, working about dangerous machinery belong-
ing to it. The trial court directed a verdict for the defend-
ant, and the plaintiff appeals.—*Affirmed.*

*Rickel & Dennis,* for appellant.

*Dawley & Wheeler* and *Dawley, Jordan & Dawley,* for
appellee.

SALINGER, J.—I. The plaintiff was em-

1. MASTER AND SERVANT: scope of employment: voluntary departure: custom: effect.

ployed by the defendant when she was
something like 12 years and 6 months old.
A description of her surroundings when
hurt is this: There was a gluing ma-
chine, with belts, levers, pulleys, forms,
etc.; a spout conducting pasteboard shells away from the
this gluing machine; the table at which plaintiff worked
at placing coupons into boxes which came to her table
from this spout and passed on before her by means of "a
slowly moving belt." The cardboard from which the boxes
are made starts out of the packing room fully cut, partly

glued, but collapsed; these collapsed tubes go to a girl who works at the gluing machine. From her they pass into a spout or pipe which the gluing machine has. This spout serves one of the tables along which the cartons or shells travel to receive coupons and rolled oats. At times, the newly glued ends of the cartons would become disengaged, through improper adhesion, and thereby were made to stop in an elbow which the pipe has, instead of descending through it to the table on which the coupons are placed. This elbow is 6 feet and 4 inches from the floor; in the angle of the elbow is a triangular hole some 2 or 3 inches each way, with its apex down. When the empty cartons leave the spout, they drop upon a table with their folded ends down and their as yet unfolded ends up. In this position, the belt upon which they have just landed carries them horizontally along the table at which plaintiff was at work. They travel some six feet from the point where they touch this belt to the point where they pass under a hopper which fills them with rolled oats. As they traveled along this table, it was the duty of plaintiff to put coupons in the open boxes, not to let any pass by without being thus filled, and to keep them going.

On the third day of plaintiff's employment, the boxes became clogged in this elbow. The aforesaid opening into the elbow was just above her head. By standing on her tiptoes, she could just reach the bottom of said pipe. She could not put her hands into the opening to loosen the boxes, without jumping. She jumped twice without being able to get her finger in. She jumped a third time, and at this time succeeded in getting her fingers into the opening and against the boxes therein, and was injured. The appellant insists that, in putting her fingers into this opening, plaintiff was only doing her duty, which required her to keep the boxes moving, and, as her injury could

easily have been prevented by guarding the said opening, her injury was due to negligence in failing to provide her a safe place wherein to work, and safe appliances to work with. It is insisted by the appellee that what she did was not in the course of her employment at all. It is not overlooked there is a claim that defendant is liable even though plaintiff did what she did outside of the course of her employment. None the less, it is an important question whether plaintiff departed from that course. Reviewing the testimony with consideration of the denial of abstract by appellee, which is controlling so far as it goes, it appears by testimony for the defendant that the duties of plaintiff were those of a "coupon girl;" that these did not include loosening boxes in the elbow when they clogged it, and that this was the duty of another employe; that the one who employed plaintiff told her that all she had to do was to put in coupons. The testimony adduced by the plaintiff discloses that her duties were to drop coupons into the boxes and to keep the boxes going. As throwing light upon what plaintiff understood her duties to be, it is found in her testimony that, at times, when the boxes fell over while going on the belt, she had to hurry and straighten them up; that she had to see to it that the boxes did not get away from her without coupons. She also states, by way of conclusion, that she had to keep the boxes from clogging, so that they might come out of the pipe.

The essential claim for appellant is that her instructions to keep these boxes going meant that she was required to keep them going before they reached her there; that she could not keep them going unless she kept them coming. She was told what her duties were before she entered upon the employment in which she was injured. Whatever understanding she had as to what was required of her, she obtained at that time. If she understood that she was required to reach into the elbow and loosen the

boxes, she would have made an attempt to do this the very first time that the clogging occurred. Yet she testifies that, when this happened on the first day on which she worked at this table, she did not attempt to relieve a clogging that occurred. She explains her failure to do this on the first day by saying that "nobody told me to," and that she did not do it because they were loosened by "the girl that was operating the (gluing) machine." Even on the third day, when she was hurt, the clog in the pipe was relieved by this same girl, and by others. We cannot avoid concluding that the direction that she should keep the boxes going did not mean, and was not understood by her to mean, that she was to keep them coming, and that, as the boxes passed through the spout only while they were coming to her, and were, so far as she was concerned, not going until after they reached the place where it was her duty to put in coupons, her duties did not begin until they reached her. Moreover, if it had been her duty to keep the pipes from clogging, it was not necessary for her to perform it by putting her hand into the pipes. The clogging could be and often was relieved by tapping on the side of the pipe.

1-a

Unless the age of the plaintiff makes a difference, then if we assume that what the plaintiff did was not done in the course of her employment, it seems to us to be immaterial, if it be true, that what plaintiff did was customary, and that she was influenced by seeing others stick their finger into this opening. Even if we pass the point that she saw this done but once, and then by a girl who was a machine operator, and who was tall enough to be able to put her hand into the opening without jumping, to give this alleged custom any importance in the case of an adult gives no importance to the departure from

the course of employment. Had it been her duty to keep the pipe clear, it might be important that she performed that duty in the manner customarily permitted by the employer. The trouble with the argument is that one may not usurp a function and justify the doing of it because he has performed it, in the way the function is performed by those who are entrusted with it.

II. Were plaintiff an adult, and departing from the work she was employed to do, it would be immaterial that she was hurt in operating dangerous machinery, and that the same was not guarded, though it might have been. Where the employment is specific, and an injury results from a voluntary abandonment of that employment, without the consent of the master, it cannot matter that the injury was caused by operating dangerous machinery. If an adult of average intelligence leaves an employment to operate a typewriter, and without request or permission handles a dangerous and imperfectly guarded machine which her employer has in some department of his business, it cannot be claimed that the employer is liable for what results. But plaintiff did not operate any such machinery. There is some testimony on part of defendant that machines were present, but, when rightly understood, this was no reference to the pipe, but to the gluing machine, from which plaintiff suffered no injury. The suit is not bottomed upon the theory that injury came from operating a machine. Its claim is that injury resulted from an attempt to relieve a condition of inertia,—not because of operating a machine, but because boxes were at a standstill in a pipe. In her own testimony, plaintiff differentiates machine from the pipe, because she says, concerning another operator, that "this

2. MASTER AND SERVANT: Factory Act: voluntary departure from line of employment: dangerous machinery.

3. MASTER AND SERVANT: Factory Act: dangerous machinery: what is not dangerous machinery.

young lady was not working on the pipe; she was working on the machine." Appellee's denial of abstract discloses that another witness said, "those pipes are called air pipes, and are not part of the machinery. I would say it was not part of the machine."

It is held, in *Gallenkamp v. Garvin Mach. Co.*, (N. Y.) 99 N. E. 718, that the word "operate" means to put in action, supervise the working of, put into or continue in operation, as to operate a machine; and that, where the operation of a hoist was relied upon, the burden was on plaintiff to show that, in addition to its being a hoist, its use was subject to some danger not usual to such appliances. Further, that a conveyor hoist in a tool factory consisting of pans on which tools were placed for transportation up and down, moving at the rate of about one foot per second, which it was perfectly safe to operate so long as the person using it did not place some portion of his body inside the conveyor shaft between the pans and keep it there for a sufficient length of time to allow the succeeding pans to strike him, is not a dangerous machine, as distinguished from an ordinary elevator or other moving machine in a factory, so as to make the master liable for injuries to a minor servant while negligently operating the conveyor.

### 2-a

4. MASTER AND SERVANT: place for work: dangerous machinery: proximate cause.

There is the alternative argument that, even if the pipe was not machinery, plaintiff was not furnished a safe place to work, because the room in which she worked contained a number of machines, both in front and back of her; that work was done upon those in front; that, in going from the office to the place where she worked, she would have to pass along these machines in operation, and had to be careful not to get into them. In the first place, we think it clear no allegation in plead-

ing covers this negligence. Be that as it may, had plaintiff been an adult of average intelligence, it would certainly be held that, though she was exposed to dangers from other machines, that, since she suffered no injury from them, and their presence had nothing to do with her jumping up and putting her hands into this air pipe, that the presence of said other machines was immaterial.

As to some claim based upon the degree of air pressure in the pipe as a factor in moving the boxes through it, the answer is there is no evidence that plaintiff was hurt because of that pressure. Her injury came because, 'while in the act of jumping, she tore her finger on a sharp edge at the bottom of the pipe. This disposes, too, of objections to limitations upon cross-examination. Had it been pursued, it would have disclosed no more than that an air current helped the boxes through the pipe, and that some parts of some machinery were guarded.

III. The next contention is that defendant should have instructed the plaintiff how to relieve the clogging, and have warned her against doing so by the method which she adopted. To this there are at least two answers: First, the defendant had no warrant for assuming that relieving the pipe in the manner pursued by plaintiff was dangerous, because, with the exception of the injury to plaintiff, no one had ever been injured by this method of clearing the pipe; second, defendant was not required to anticipate that plaintiff would leave the work she was employed to do and undertake what she was not employed to do and others were. See *Harney v. Chicago, R. I. & P. R. Co.*, 139 Iowa 359; *Meyers v. Bennett A. S. Co.*, 169 Iowa 383; *Haskell v. L. H. Kurtz Co.*, 181 Iowa 30. The very statute upon which appellant relies makes the last clear. All

5. MASTER AND SERVANT: warning and instructing: non-apprehended dangers.

6. MASTER AND SERVANT: warning and instructing: voluntary departure from line of employment.

that it inhibits is "permitting" an employe "to operate or assist in operating dangerous machinery of any kind." Code Supplement, 1913, Section 4999-a2. As said, no dangerous machine was operated,—there is no evidence that there was any permission to operate it.

7. NEGLIGENCE: evidence: contributory negligence as bearing on defendant's negligence.

Assume that, ordinarily, it must be left to a jury whether a child of very tender years, say ten, was guilty of contributory negligence, and that the care required of such an one is the ordinary and reasonable care required and expected of children of that age, knowledge, experience and capacity, rather than that of an adult. 1 Thompson, Negligence, Sections 308, 309; *Long v. Ottumwa R. & L. Co.*, 162 Iowa 11. Assume for *Long v. Ottumwa R. & L. Co.*, 162 Iowa 11, and *Hazlerigg v. Dobbins,* 145 Iowa 495, that not only is the question of whether the child contributed to its injury, for the jury, but that, where the child is under fourteen, the burden is on defendant to show, affirmatively, that the child had capacity for the exercise of care for his own protection. When all this is conceded, it is but a concession that here contributory negligence was for a jury. This concession is not in the least decisive of whether defendant was negligent in employing the plaintiff to work at a table in filling a box with coupons and passing it along, because it was bound to assume, or a jury might find it was so bound, that this work would be abandoned and the girl do what she did do. That the plaintiff was free from contributory negligence is no evidence that the defendant was guilty of negligence.

8. MASTER AND SERVANT: warning and instructing: voluntary departure from line of employment.

Even as to an infant, the utmost is that the master who employs in violation of statute is liable for injury sustained "in the course of such employment." *Gallenkamp v. Garvin Mach. Co.*, (N. Y.) 99 N. E. 718. Of course, the original employment

may be changed by mutual consent. The naked fact that employment is changed creates no liability and relieves from none. *Haskell v. L. H. Kurtz Co.*, 181 Iowa 30. The difficulty lies in the major premise. The plaintiff had no permission to change her employment. Her case rests not upon the claim that she was directed or permitted to do what she did, but that the master was negligent in not anticipating that she would do it. It will not be seriously contended that this claim could be made by an adult who was not known to be below the average in intelligence. So that, in the last analysis, the plaintiff's case hinges upon whether a jury might rightfully find it was negligent not to assume or expect that plaintiff would leave the work she was hired to do and put her hand into this pipe, as she did, and, therefore, negligence in not warning her not to do this. We may concede that, if the employer knew or had reason to believe that the employe was not yet thirteen, and was far below the average standard of intelligence in those of her apparent age, there would have been such duty to warn. To the question of defendant's knowledge concerning the true age of plaintiff, we shall speak later. At this point, we shall but consider whether the plaintiff fell below that mental standard, and, if so, what knowledge of that fact the defendant possessed, or should have obtained. Could a jury find plaintiff was, to the knowledge of defendants, so lacking in intelligence as to suggest to the employer that she would leave safe work, go to this pipe and do what she did there? What we have next to say presents no more than a difference in degree. Was there anything to suggest to the employer that this girl would leave the room where she was working and go into another story of the building and operate dangerous machinery found there; or, if employed to can corn, that she would injure herself by deliberately trying to batter down

a post with her head, or by putting her finger under the wheel of a moving truck; or that, if not required to use a hammer or a paper weight, she would pick one up and strike her hand with it? It seems to us that the supposed cases do not differ in principle, and that the master might as well be implied to anticipate these as that this girl, who was under no requirement to touch the pipe, would jump three times in order to put her hand into that device, and that it might as well be required he should have warned her not to jump out of a window or to play with razors. This disposes of any objections on the exclusion and admission of testimony. It should be said, in passing, appelant misapprehends testimony in claiming the general foreman said he did instruct "employes" how to relieve the pipe when it became clogged. This was not said with reference to plaintiff, but concerning another employe.

Recurring: if there should have been such anticipation where there was reason to believe the employe lacked sufficient mentality to appreciate what she was doing, we have to say that this record presents no such case. Plaintiff testifies she belongs to a family in which the children are compelled to display commercial activity early; that she has one brother, eight years old, who sells papers. She states that she worked in a laundry before she entered the employ of defendant, and exactly what that employment was, and points out that there she worked on no dangerous machinery. She remembers in detail when this was. In explaining that she took half a term of music lessons, she says, "By half a term I mean six lessons." She testifies she went to the mill because she thought she could get more money; that she went with a cousin; that her cousin wanted her to go, though her mother did not, and that the mother did not know she went; that the cousin first saw the forewoman; that the cousin first inquired of another whether plaintiff could be employed, and on being told "no,"

she talked to the forewoman, inquired whether she needed any girls; that the forewoman said she would take plaintiff; that she inquired how old plaintiff was; that, before plaintiff could answer, the cousin said plaintiff was fourteen. Plaintiff says she kept still about her age because she knew she needed the work; that thereupon the forewoman said she would take plaintiff. She is able to say that, when she first went to work, it was on the fourth floor in the dish room, where she found the forewoman, who employed her, and another forewoman; that this was around noon and they were eating dinner; that her work in the dish room consisted of wiping dust, straw and things like that from the dishes; that she worked there only one afternoon; that then she was put to work on the third floor to take bosses off the belt; that she worked there one morning from 7 until 12; that then she was set to work putting cracked hominy in tin cans; that she continued at this until put on the machine on which she got hurt; that, in making the change, the forewoman said, "Ruth, come down here. I want you on the second floor. I need you." She found the forewoman standing by the side of plaintiff's sister, and the forewoman then holloed and said, "Keep the boxes going and don't let any go without a coupon in them." She says she is unable to tell how many times the clogging occurred on the first day; that, while it was at least a dozen times, she does not know whether it was 2 or 3 dozen times; that, on the day of her injury, she began work about 7 in the morning and was hurt about 10 in the morning; says she never told her mother she was working there until after her finger was taken off; that the forewoman never said anything about her age certificate until after she was hurt, and that then she said, "Ruth, when you bring that certificate back you can come back and go to work." She adds, "But I never brought it back nor went to work there again."

We are constrained to hold that, beyond all question, this plaintiff had capacity to understand what she was employed to do, and to appreciate, first, that she was departing from that work when she put her hand into the air pipe to loosen boxes; second, that she had as much appreciation that this might hurt her as the defendant could have, in view of the fact that only an extraordinary and unforeseen set of conditions could produce an injury there, and that, in months of use and operation, no injury had been suffered by anyone.

IV. Plaintiff was born on April 10, 1900. In obtaining employment, and for that purpose, she permitted a statement to be made that she was almost 15. She testifies that, when her cousin told the people at the mill that plaintiff was 14, she knew this was not so, but said nothing about her age; that she kept still about her age because she knew she needed the work; that she did not tell her parents because they didn't want her to work any place; they had told her she couldn't work at the mill, and she told no one at the mill that her parents didn't want her to work there. In these circumstances, we are not prepared to hold that mere employing her when she was in fact less than 14 makes defendant liable absolutely. We are not called upon to decide what the rule would be if, despite this conduct of plaintiff's, defendant was put on inquiry as to whether plaintiff was not too young to be safely employed at all, or for such work as she was employed to do. We have already dealt with her mental capacity. It may be added that, when she was hired, her dress came below her knee cap, and that there is testimony that defendant's foreman did not believe her to be less than 14. Nothing indicated she might do what led to her being injured. Even as to a minor against whom contributory negligence is no defense, it was held that it is a defense

9. MASTER AND SERVANT: Factory Act: false representation as to age: effect.

where it can be said that the minor by his own negligence contributed to the act of employment. *Gallenkamp v. Garvin Mach. Co.,* (N. Y.) 99 N. E. 718.

But defendant was advised that plaintiff was less than 16. The statute prohibited •her being *permitted* "to operate or assist in operating dangerous machinery of any kind." Code Supplement, 1913, Section 4999-a2. This statute effects nothing in this case, unless it may be held that plaintiff was permitted to operate or assist in operating dangerous machinery. We have already said that the thing that injured her was not ,operated as machinery, was not machinery at all, and, therefore, not dangerous machinery. If it were, that plaintiff chose to abandon the work for which she was employed, and operated dangerous machinery, is certainly not a permission to have her do so. The statute would rule only had the pipe been dangerous machinery, and it had been or should have been known that plaintiff was operating it, and been permitted to do so. That is why the citations relied upon by the appellant have no application.

*Pettit v. Atlantic C. L. R. Co.,* (N. C.) 72 S. E. 195, holds that, in the absence of statute, a recovery cannot be had for injuries to an infant under 12 merely because he is an infant; wherefore, a statute which provides that no child under 12 shall be employed in any manufacturing establishment or factory, does not prohibit his employment by a railroad company as a messenger. *Stehle v. Jaeger A. M. Co.,* (Pa.) 74 Atl. 215, is decided under an act which makes it unlawful to employ any child under 14 in any "establishment" as defined in the act. Upon this it was held that, where such child is injured in such establishment, there is never a question of risk of employment or of contributory |negligence. In *Casteel v. Pittsburg V. P. & B. R. Co.,* (Kans.) 112 Pac. 145, the statute, under

penalty, prohibited employment "at any occupation nor
at any place dangerous or injurious to life, limb, health, or
morals." It was held that, in such action, it is not nec-
essary for plaintiff to prove defendant knew that the occu-
pation was dangerous; that in such case, violating the law
is the proximate cause of the injury; and that, under such
statute, an occupation is dangerous "whenever there is rea-
son to anticipate injury to the person engaged in it, wheth-
er the risk arises from the inherent character of the work
or the manner in which it is in fact carried on, even al-
though the danger may be reduced or eliminated by the
exercise of due care and skill on the part of the employe."
*Gallenkamp v. Garvin,* (N. Y.) 99 N. E. 718, deals with a
statute which prohibits employment of children under 14
in any factory; provides that no child under 15 shall be
employed or permitted to have the care, custody or man-
agement of or to operate an elevator in a factory; that chil-
dren under 16 shall not be permitted to operate or assist
in operating dangerous machinery of any kind; that no
male person under 18 shall be permitted to operate or as-
sist in operating dangerous machinery of any kind.

It was held that employment of one under 14 in viola-
tion of the statute is evidence of negligence on part of the em-
ployer as to injury sustained "in the course of such employ-
ment," without reference to the character of the work the
child is required to perform; that the question of contrib-
utory negligence is not involved "unless the minor can be
said by his negligence to have contributed to the act of
employment." In *Sharon v. Winnebago F. M. Co.,* (Wis.)
124 N. W. 299, the statute under consideration is one which
absolutely prohibited certain work to be done by children
under 16, and their being employed in certain occupations.
The employment involved was the operation of a circular
saw, contrary to statute. It was held as to this that the
efficient proximate cause was the negligence of the master

in violating such statute. It is further held that in that case the injury should have been reasonably anticipated by the master as the natural and probable result of setting the minor to work, and that, because of such statute, the injury must be anticipated.

*Casperson v. Michaels,* (Ky.) 134 S. W. 200, does hold that, in the case present there, the proximate cause of injury to a child employed at a laundry mangle in violation of statute is, as affecting the employer's liability, the said unlawful employment, and it is held upon these premises that, when a child is thus injured while warming her hands on a revolving cylinder before commencing work, it is no defense that she was injured by a part of the mangle at which she is not expected to work, and while not at work. The Kentucky statute absolutely prohibits the employment of children under 16 to operate such machinery as was operated in the case. The distinction is, then, that here there was no dangerous machine to operate upon, and no permission was given to go elsewhere and operate such an one, and, where one employs a child to work at a mangle in disregard of a positive statute, it is not a strain to hold he might anticipate that, if such machine has a revolving cylinder at which the child can be warmed, it might warm its hands at said cylinder on coming in from the outside to assume the prohibited employment. In other words, in the Kentucky case one who had committed a tort was, under elementary laws, held to be responsible for what might reasonably, though not necessarily, follow from the tort, though it was not expected it would follow. The gap in the case before us must be bridged by assuming, and without authority, that the employment given was prohibited; next, that the conveyor was a dangerous machine; that handling it was permitted, and, if not permitted, should have been anticipated and guarded against.

In *Woods v. Kalamazoo P. B. Co.,* (Mich.) 133 N. W. 482, the declaration averred a breach of statute, in that plaintiff was employed in violation of statute at work dangerous to life and limb; that defendant did not keep a required register in which was recorded the name, birthplace, age and place of residence of plaintiff; did not have on file in its business office a permit issued by the superintendent of schools, or the person in charge of any state employment bureau, or the probate judge of the county,— and other breaches of statute duty, as well as negligence to properly instruct in the proper use of the machine, are averred. It will be noticed that here there is no question that the employe was using a machine, and yet it was held that she was negligent as matter of law and could not recover, notwithstanding said statute, because she was injured by getting her finger caught between the hammer and anvil of the machine as she was drawing certain paper forward in order to start the machine after it had been at rest; that she was in no danger unless the machine moved; that it could not move unless she set it in motion by pressing a treadle, and there was no occasion for her to place her finger in a position where it could be injured, and none to start the machine when the finger was in such position.

It follows from what we have said that the judgment and order appealed from must be—*Affirmed.*

GAYNOR, C. J., LADD and EVANS, JJ., concur.